UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DISTRICT

AMY SUROFCHECK,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff sues Defendant and alleges:

**PRELIMINARY ALLEGATIONS**

1. Plaintiff, AMY SUROFCHECK ("SUROFCHECK"), is a citizen of Colorado.

2. Defendant, ROYAL CARIBBEAN CRUISES LTD. ("RCCL"), is a foreign corporation having its principal place of business in Miami, Florida.

3. The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

4. This action is being pursed in this Court, as opposed to state court as otherwise allowed by the Saving to Suitors Clause of 28 U.S.C. §1333 because RCCL unilaterally inserts a forum clause into its cruise tickets that requires its passengers to file cruise-related suits only in this federal district and division, as opposed to any other place in the world.

5. Defendant RCCL, at all times material hereto, personally or through an agent:

    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b. Was engaged in substantial activity within this state;

    c. Operated vessels in the waters of this state;

    d. Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193;

    e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state;

    f. The Defendant was engaged in the business of providing to the public and to the Plaintiffs in particular, for compensation, vacation cruises aboard its vessels.

6. At all times material hereto, Defendant RCCL is subject to the jurisdiction of the Courts of this State.

7. At all times material hereto, the causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

8. At all times material hereto, Defendant RCCL owned, operated, managed, maintained and/or controlled the vessel *Harmony of the Seas*.

9. On or about May 31, 2018, Plaintiff was a paying passenger on Defendant RCCL's vessel *Harmony of the Seas*, which was in navigable waters.

10. On or about May 31, 2018, Plaintiff participated in an attraction onboard the *Harmony of the Seas* called the FlowRider Surfing Simulator (hereinafter "FlowRider").

11. The FlowRider is an attraction that shoots a sheet of water up a sloped surface at a high velocity to simulate the surface of a wave. Users then attempt to ride this sheet of water on a board as instructed by an RCCL crewmember.



12. On or about May 31, 2018, Plaintiff was using the FlowRider aboard the *Harmony of the Seas* and was being instructed by an employee/crewmember of RCCL.

13. The Plaintiff had never previously used the FlowRider, and Plaintiff notified RCCL's employee/crewmember that she had never previously used the FlowRider.

14. At the time that the Plaintiff was using the FlowRider, only half of the FlowRider's area for a single user was working so that water was being circulated on the FlowRider in only half the area where a single user ordinarily rides.



15. Before the Plaintiff began using the FlowRider, the Plaintiff was told by RCCL's employee/crewmember who was running the FlowRider activity that the fact that the FlowRider was not fully operational (because water was being circulated on the FlowRider in only half the area where a single user ordinarily rides) would not affect her ride if the Plaintiff followed his instructions.

16. As the Plaintiff was body surfing on the FlowRider while only half of the FlowRider's area for a single user was working, RCCL did not provide an employee/crewmember on the edge of the water flow (in the middle of the FlowRider single user area) to assist the Plaintiff to get back into the flow of the water.



17. Rather than provide assistance on the edge of the water flow, RCCL's employee/crewmember would yell instructions to the Plaintiff about how to manipulate her body and board to get back into the water flow and how to stay in the narrow water flow and not drift to the edge of the water flow.

18. At all times material, the Plaintiff dutifully followed the instructions of RCCL's employee/crewmember while using the FlowRider.

19. While in the center of the water flow, RCCL's employee/crewmember instructed the Plaintiff to push down on the front of the board as hard as she could, which – previously unbeknownst to Plaintiff – would cause the flow of the water under her to cause her to violently flip head first and causing her head and neck to collide into the hard surface of the FlowRider.







20. Then the Plaintiff was carried by the water flow, causing the Plaintiff to collide into the back wall of the FlowRider.



21. As a result, the Plaintiff was severely injured.

22. Following the Plaintiff's incident, the RCCL employee/crewmember who had been instructing the Plaintiff while she used the FlowRider was replaced by other RCCL employee/crewmember who would position themselves on the edge of the water flow (in the middle of the FlowRider single user area) to physically assist other passengers using the FlowRider to get back from the edge of the water flow into the flow of the water, without yelling instructions to the other passengers using the FlowRider.



23. Thereafter, RCCL closed the FlowRider to RCCL passengers due to a "maintenance issue."



**COUNT I – NEGLIGENCE**

Plaintiff incorporates by reference and realleges as though originally alleged herein the allegations of paragraph 1 through 23 and further alleges:

24. It was the duty of Defendant RCCL to exercise reasonable care under the circumstances and to maintain and operate its vessel in a reasonable safe condition and manner.

25. On or about May 31, 2018, RCCL and/or its agents, servants, and/or employees breached its duty to provide Plaintiff with reasonable care under the circumstances.

26. Plaintiff was injured due to the fault and/or negligence of RCCL, and/or its agents, servants, and/or employees as follows:

   a. Failing to properly maintain the FlowRider;

   b. Allowing the FlowRider to be used by passengers when it was not fully operational;

   c. Failing to close the FlowRider to passengers when it was not fully operational;

   d. Failing to warn passengers (including the Plaintiff) of the dangers of using the FlowRider;

   e. Failing to warn passengers (including the Plaintiff) of the dangers of using the FlowRider when it was not fully operational;

   f. Failing to properly, safely and adequately instruct, supervise and/or assist passengers (including the Plaintiff) participating in the attraction on its proper use;

   g. Failing to provide adequate assistance to the Plaintiff on the water flow edges on the FlowRider;

   h. Failing to provide an adequate number of employees/crewmembers to assist passengers (including the Plaintiff) on the FlowRider when it was not fully operational;

   i. Instructing the Plaintiff to push down on the front of the board as hard as she could while in the water flow;

j. Failing to warn Plaintiff of the dangers of pushing down on the front of the board as hard as she could while in the water flow;

k. Failing to take and engage proper and reasonable precautions and safeguards for the safety of passengers when encouraging passengers to participate in the attraction;

l. Failing to promulgate and/or enforce adequate rules or procedures to ensure the safety of passengers using the attraction;

m. Failing to promulgate and/or enforce adequate rules or procedures to ensure that instructors are adequately supervising the attraction and properly instructing passengers in its use;

n. Failing to promulgate and/or enforce adequate rules or procedures to ensure that an adequate number of instructors are supervising the attraction and properly instructing passengers in its use;

o. Failing to properly and adequately instruct, train and supervise employees/crewmembers and/or agents acting as instructors in how to conduct the subject activity safely;

p. Failing to prevent improper and dangerous use of FlowRider; and/or

q. Failing to station instructors in proper positions around the FlowRider to help participants in need of aid;

r. Hiring and retaining employees/agents for supervising, instructing, and assisting passengers participating in the subject activity without performing a thorough background and qualifications check to ensure they possessed the skills necessary to properly and safely instruct passengers participating in the subject activity; and/or

s. Retaining employees/agents when Defendant knew, or should have known, that the employees/agents were negligent, careless, and/or reckless, incapable, incompetent, and/or posed a danger to passengers participating in the subject surfing activity;

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

    t. Failing to provide adequate supervision of employees/agents who instructed, supervised, and assisted passengers participating in the subject activity when it knew, or should have known, that improper, negligent, careless, incompetent, incapable, improper, and/or reckless instruction would likely result in serious injury;

    u. All other acts or omissions constituting a breach of the duty to use reasonable care revealed through discovery.

27. All or some of the above acts and/or omissions caused and/or contributed to Plaintiff being injured while using the FlowRider.

28. At all times material, Defendant RCCL knew or should have known that operating the FlowRider while water was being circulated on the FlowRider in only half the area where a single user ordinarily rides was unreasonably dangerous. This was evidenced by RCCL's crewmember/employee telling the Plaintiff that the fact that the FlowRider was not fully operational (because water was being circulated on the FlowRider in only half the area where a single user ordinarily rides) would not affect her ride if the Plaintiff followed his instructions.

29. At all times material, Defendant RCCL knew or should have known that yelling an instruction to the Plaintiff while she was in the water flow to push down on the front of the board as hard as she could was unreasonably dangerous because it would simultaneously cause the front of the board to be pushed under the flow of the water while it raised the Plaintiff's center of gravity, causing the Plaintiff to flip onto her head and neck.

30. As a direct and proximate result of the negligence of Defendant RCCL, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and lost wage earning capacity as Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature and Plaintiff will suffer the

losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

 **WHEREFORE** Plaintiff demands judgment for all damages recoverable under the law and demands trial by jury.

### COUNT II – STRICT PRODUCTS LIABILITY FOR THE NEGLIGENT DESIGN, INSTALLATION, AND UTILIZATION OF THE FLOWRIDER

 Plaintiff incorporates by reference and realleges as though originally alleged herein the allegations of paragraph 1 through 23 and further alleges:

31. The subject FlowRider onboard the *Harmony of the Seas* is different from a standard FlowRider, because employees and/or agents of RCCL modified the original FlowRider design and ordinary manufacture on this unit by shortening its overall length in order to fit the attraction on the deck of the cruise ship.

32. The modification of the design and ordinary manufacture of the FlowRider by RCCL causes the FlowRider to have different characteristics and additional dangers than a standard FlowRider.

33. At all times material hereto, the Plaintiff was unaware of the modification of the design and ordinary manufacture of the FlowRider by RCCL.

34. At all times material hereto, Defendant RCCL owed a duty to its passengers, and in particular to Plaintiff, to maintain and operate its vessel, *Harmony of the Seas*, in a reasonable manner under the circumstances.

35. At all times material hereto, Defendant RCCL was a manufacturer, designer, distributor, and/or was otherwise within the chain of distribution of the FlowRider product, having put the FlowRider on which the Plaintiff was injured into the channels of trade.

36. At all times material hereto, Defendant RCCL manufactured, designed, installed, and/or utilized the FlowRider on the *Harmony of the Seas*, and as such owed a duty to its passengers, and in particular to the Plaintiff, to design and utilize the "FlowRider" without any defects.

37. At all times material hereto, Defendant RCCL, knew or had reason to know that the FlowRider was unreasonably dangerous. RCCL knew or had reason to know that the FlowRider was unreasonably and inherently dangerous in that its guests would routinely be injured while participating/using the attraction.

38. Since passengers would not be aware of the dangers involved, RCCL had a duty to warn passengers participating in the FlowRider attraction that the attraction was likely to be dangerous.

39. The design flaw and lack of warnings which made the FlowRider onboard the *Harmony of the Seas* inherently and unreasonably dangerous was the direct and proximate cause of Plaintiff's injuries.

40. As a result of the foregoing, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and lost wage earning capacity as Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE** Plaintiff demands judgment for all damages recoverable under the law and demands trial by jury.

Respectfully submitted,

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
*Attorneys for Plaintiff*
One Biscayne Tower, Suite 1776
2 S. Biscayne Boulevard

>Miami, Florida 33131
>Telephone: (305) 373-3016
>Facsimile: (305) 373-6204
>
>By: */s/ Jason R. Margulies*
>**JASON R. MARGULIES**
>Florida Bar No. 57916
>jmargulies@lipcon.com
>**JACQUELINE GARCELL**
>Florida Bar No. 104358
>jgarcell@lipcon.com